FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 NOV 13 AM 8: 48



IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77199-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| YAROSLAV OLEGOVICH LEBED, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: November 13, 2018 |

ANDRUS, J. — Yaroslev Olegovich Lebed pleaded guilty to two counts of assault in the fourth degree, domestic violence. The plea agreement recommended that Lebed serve 120 days in confinement, followed by 60 days of participation in either Moral Reconation Therapy (MRT) or substance abuse treatment through the Community Center for Alternative Programs (CCAP). The sentencing court ordered Lebed to serve 150 days in confinement, rather than the 120 days recommended by the plea agreement. Lebed appeals, claiming that the State breached the plea agreement during sentencing, resulting in the harsher sentence. We affirm Lebed's convictions and sentence.

## FACTS

Lebed was charged with one count of assault in the second degree, domestic violence, after assaulting his then-girlfriend, Tara Elizabeth Jones, on

February 25, 2017. After plea negotiations, the State amended the charges to two counts of assault in the fourth degree, domestic violence. Lebed's signed plea agreement stated that in exchange for a guilty plea, the State would recommend a suspended sentence of 364 days, on the conditions that Lebed serve 120 days in jail, followed by 60 days of participation in CCAP with substance abuse treatment or MRT if admitted by lottery. The plea agreement also specified that if MRT was unavailable, Lebed would do 5 days of CCAP per week for the 60-day period.

During the sentencing hearing, a different prosecutor appeared on behalf of the State. In response to an inquiry from the court as to why the confinement period was 120 days when Lebed had strangled three people in the past, the prosecutor acknowledged that the facts of the crime and Lebed's history were "concerning," but mentioned that the plea was the result of "evidentiary issues." Defense counsel then explained to the court that the plea agreement reflected Lebed's mental illness and that imposing additional confinement was not going to be rehabilitative to Lebed.

The court imposed a sentence that included all of the conditions on the plea agreement but ordered 150 days in confinement, rather than 120 days outlined in the plea agreement.

## ANALYSIS

Lebed contends that the State breached the plea agreement by encouraging the sentencing court to impose a harsher sentence. We disagree.

Plea agreements are contracts between the State and the defendant. State v. Sledge, 133 Wn.2d 828, 839, 947 P.2d 1199, 1204 (1997), as amended (Jan. 28, 1998). Because plea agreements concern the fundamental rights of the accused, constitutional due process considerations are involved. Id. Due process requires the State to adhere to the terms of the agreement. Id. We review whether the State breached a plea agreement de novo. State v. Neisler, 191 Wn. App. 259, 265, 361 P.3d 278, 281 (2015). In determining whether the State's comments breached the plea agreement, we look to the sentencing record as a whole. Id. at 266. The test is whether the State's words or conduct, without looking to the intent behind them, contradict the State's recommendation. Id.

While the sentencing court is not bound by the State's plea recommendation, RCW 9.94A.431, a prosecutor is obligated to fulfill the State's duty under the plea agreement in making the agreed sentencing recommendation. Sledge, 133 Wn.2d at 840. Though the State need not make the recommendation enthusiastically, it has a duty not to undercut the agreement "explicitly or by conduct evidencing an intent to circumvent the terms of the plea agreement." Id.; see also In re Palodichuk, 22 Wn. App. 107, 589 P.2d 268 (1978).

Lebed asserts that the prosecutor's comments during the following exchange breached the plea agreement and encouraged the sentencing court to impose a harsher sentence:

> COURT: It would appear this is the third person the defendant has strangled, so I was interested how you came up with a 120 day recommendation?
>
> . . .

> [PROSECUTOR]: As I'm looking over it, I think that probably what I can say is that there were some evidentiary issues that I think have little to do with the factual scenario that's portrayed in the certification. In other words I can see the cert - - both the facts of the certification and the history as concerning. I think that there were some evidentiary issues that caused some concern about the risks of going to trial. That's probably about as - - as much as I can probably say.

Lebed claims that the prosecutor's statement that the factual allegations and Lebed's prior criminal history were "concerning" went beyond what was necessary to explain the sentencing recommendation and thus breached the plea agreement. Lebed analogizes his case to State v. Carreno-Maldonado, 135 Wn. App. 77, 143 P.3d 343 (2006), where Division Two of this court found that the prosecutor's statements went beyond what was necessary to support the sentencing recommendation, leading the court to reverse Carreno-Maldonado's sentence. Id. at 89. In that case, Carreno-Maldonado agreed to plead guilty to seven counts, in exchange for a total sentence of 564 months, which reflected sentences in the low, mid, and high ranges for their respective offenses. Id. at 79-80. After the court outlined the standard range sentences for Carreno-Maldonado's offenses, it asked the prosecutor whether he had anything to add. Id. at 80. In response, the prosecutor made a lengthy statement on behalf of Carreno-Maldonado's seven victims. Id. at 80-81. Following the prosecutor's statements, the court sentenced Carreno-Maldonado to concurrent high-end sentences on all seven counts, resulting in a 682 month sentence, 118 months longer than in the plea agreement. Id. at 82.

Here, Lebed asserts that his case is similar to that of Carreno-Maldonado. We disagree. Lebed pleaded guilty to two counts of fourth degree assault, domestic violence, with each count carrying a maximum of 364 days' confinement. In Lebed's plea agreement, the State agreed to recommend a suspended sentence conditioned on Lebed serving 120 days of confinement for both counts, along with 60 days' participation in CCAP with substance abuse treatment or MRT, or alternatively, additional CCAP. The State did so. The prosecutor did not engage in a lengthy discussion to undermine the plea agreement, as the prosecutor did in Carreno-Maldonado.

Furthermore, in State v. Coppin, this court concluded that, in a similar situation, a prosecutor's comments during a sentencing hearing, if made in response to inquiries by the sentencing judge, do not constitute a breach of a plea agreement. 57 Wn. App 866, 875, 791 P.2d 228 (1990) (prosecutor's comment that he would have argued for an exceptional sentence in the absence of a plea agreement in response to the court's question was not a breach of the agreement). In Coppin, the court said "a prosecutor under such circumstances has no alternative but to answer the tribunal honestly." Id.

The Supreme Court has similarly held that answering the sentencing court's questions about a recommendation, despite its potential for prejudice, does not constitute a breach of the plea agreement. State v. Talley, 134 Wn.2d 176, 185, 949 P.2d 358, (1998).

Lebed's situation is analogous to <u>Coppin</u>. The prosecutor's statement acknowledging concern about the factual allegations and Lebed's criminal history did not undermine the agreement and was not a breach thereof.

Affirmed.

_Andrus, J._

WE CONCUR:

_Dwyer, J._          _Schindler, J._